No. 59,724

In the Matter of J. RICHARD LAKE, *Respondent.*

(737 P.2d 40)

Opinion filed May 1, 1987.

*Stanton A. Hazlett* appeared for petitioner.

*J. Richard Lake,* of Holton, appeared pro se and by his attorney, *John J. Ambrosio.*

The respondent, J. Richard Lake, appeals from the disciplinary panel's finding the respondent violated DR 5-101(A), DR 5-104(A), DR 4-101(B)(1) and (2), DR 5-105(A), and DR 1-102(5) of the Code of Professional Responsibility (235 Kan. cxxxvii). The panel recommended discipline by public censure.

The respondent first represented the complainant, Peggy Sue (Alley) Hamner, in divorce proceedings in early 1983. Lake also represented Ms. Hamner in two matters related to the divorce after the divorce decree was entered on March 21, 1983.

As a result of Lake's efforts, Ms. Hamner received an income tax refund, which she testified respondent encouraged her to invest in a restaurant operation in a building respondent owned in Holton. Complainant further testified respondent drafted a contract whereby she would purchase the existing restaurant from the current operator, Micheal Ireland, and he also drafted a promissory note between the complainant and Ireland. Additionally, Lake met with Ireland and Ms. Hamner on several occasions before Ms. Hamner purchased the restaurant operation from Ireland.

Ms. Hamner opened her restaurant, "Mom's Kitchen,", in July of 1983. Around the time the business opened, Ms. Hamner discussed the possibility of a partnership with Shirley Turner. Ms. Turner drafted some proposed partnership agreements which Ms. Hamner delivered to respondent's office. Ms. Hamner asked Lake to draw up a partnership agreement, but no agreement was ever drafted. The relationship between Ms. Hamner and Ms. Turner deteriorated and Ms. Turner withdrew from the restaurant operation in August 1983.

During the time the restaurant was open, respondent not only

acted as complainant's landlord, but also leased Ms. Hamner restaurant equipment; devised a bookkeeping system for the restaurant; helped Ms. Hamner compute her payroll; prepared a Small Business Administration (SBA) loan application for the restaurant which he signed in his capacity as attorney-at-law; and gave Ms. Hamner advice as to how to operate the restaurant.

The business failed financially and Mom's Kitchen closed on September 15, 1983. As a result of the failure of the business, five separate civil and criminal actions were filed against Ms. Hamner.

The respondent admits he represented Ms. Hamner on her first bad check charge in Shawnee County. The respondent negotiated a plea bargain with the Shawnee County District Attorney's Office whereby Ms. Hamner was permitted to plead to a reduced charge (a Class A misdemeanor). Further, the respondent appeared with Ms. Hamner at her November 18, 1983, sentencing. This case culminated in November 1983 and was active throughout the period Mom's Kitchen was operating.

During the time Lake represented the complainant in the Shawnee County criminal action, he served as Jackson County attorney. During this same time period, a second criminal action against Ms. Hamner was filed in Jackson County as the result of an insufficient funds check written on the Mom's Kitchen account. This case was eventually terminated with no conviction.

The first civil action in Jackson County against the\complainant, filed by the *Holton Recorder*, arose out of unpaid advertising expenses. Both Ms. Hamner and Ms. Turner were named defendants in this action and the respondent entered an appearance on behalf of Ms. Turner. In a letter to plaintiff's attorney dated October 3, 1983, respondent stated he knew Ms. Turner was not a partner in the business due to his familiarity with the relationship between Ms. Hamner and Ms. Turner. On December 23, 1983, a default judgment was entered against Ms. Hamner and the case was dismissed against Ms. Turner.

A second civil suit was filed against Ms. Hamner in Jackson County as a result of Ms. Hamner's default on her promissory note to Micheal Ireland. Ms. Hamner testified she took the petition and summons to the respondent who agreed to represent her. The respondent denied he was contacted by Ms. Hamner

regarding this suit. Default judgment was entered against the complainant in this case in December 1983.

A third criminal action was filed against the complainant on January 5, 1984, in Jackson County. This case was also the result of an insufficient funds check written by Ms. Hamner on the Mom's Kitchen account. The respondent and complainant both testified that respondent told complainant he could not represent her in this matter because he was county attorney of Jackson County. The case was eventually dismissed at preliminary hearing.

The disciplinary panel determined the respondent had acted as complainant's attorney, landlord, and business advisor; that respondent prosecuted complainant at the same time he was acting as her attorney in another matter and generally representing complainant; that respondent defended complainant in Shawnee County on the worthless check charge at the same time he represented Jackson County as county attorney; and, finally, respondent represented complainant's former business associate in a civil suit to the detriment of complainant and utilized information obtained from complainant in connection with such representation.

The panel concluded respondent's disregard of basic conflict of interest rules in so many situations required a recommendation he be publicly censured by the Supreme Court. Respondent appeals.

The respondent first argues the panel failed to prove by clear and convincing evidence that he had committed any ethical violations.

The standard of proof to warrant a finding of attorney misconduct requires the charge be established by substantial, clear, convincing, and satisfactory evidence. *State v. Hohman,* 235 Kan. 883, 686 P.2d 122 (1984); *State v. Scott,* 230 Kan. 564, 570, 639 P.2d 1131 (1982).

Respondent disagrees with the panel's conclusion that respondent's financial, business, and property interests in the restaurant building and equipment affected the exercise of his personal judgment on behalf of complainant. Accordingly, the panel determined respondent should not have accepted employment by complainant after he established a business rela-

tionship with her and that acceptance of such employment violated DR 5-101(A) (235 Kan. cxlv).

Respondent argues the only employment he accepted from Ms. Hamner after renting the restaurant to her was to represent her on the bad check charge. Respondent claims it "escapes the imagination" as to how his landlord/tenant relationship with Ms. Hamner could have affected his professional judgment in representing her on a bad check charge.

The panel concluded, based upon clear and convincing evidence, that the respondent had represented the complainant in other legal matters in addition to the Shawnee County criminal action after leasing to her the restaurant building and equipment. Respondent set up a bookkeeping system for complainant, he prepared documents for obtaining an SBA loan and signed them in his capacity as her attorney, and he discussed with complainant the terms of a partnership agreement and advised her on how to conduct her business. Respondent was thus placed in a position of having given legal representation to the plaintiff in connection with the restaurant and yet, when the business failed, he was placed in a position of having to protect his own financial interests.

We hold the evidence was sufficient to show the respondent violated DR 5-101(A).

Respondent next contends the hearing panel incorrectly concluded that respondent utilized information gained from Ms. Hamner in his representation of Ms. Turner in violation of DR 4-101(B)(1) & (2) (235 Kan. cxlv) and DR 5-105(A) (235 Kan. cxlvi). Lake argues the only information he used in representing Ms. Turner was gained from Ms. Turner herself. The facts clearly prove otherwise.

In a letter to opposing counsel in the *Holton Recorder* case, respondent stated that he knew from conversations with *both* Ms. Turner and Ms. Hamner that Ms. Hamner had no intention of forming a partnership with Ms. Turner. As a result of respondent's efforts, Ms. Turner was dismissed from the lawsuit and a default judgment was entered against Ms. Hamner.

We hold the panel correctly found respondent's conduct violated DR 4-101(B)(1) & (2) and DR 5-105(A).

Finally, respondent contends the hearing panel incorrectly

concluded he violated DR 5-105(A) and DR 1-102(A)(5) (235 Kan. cxxxvii) by his representation of the complainant in the Shawnee County criminal case at the same time that he, or his office, prosecuted complainant in Jackson County.

The panel relied on Opinion 28 of the Committee on Professional Ethics of the Bar Association of the State of Kansas, dated May 8, 1965, which states:

"A county attorney, whose duty it is to prosecute crimes committed within the county, may not, while in office, properly undertake the defense of one accused of a crime in another county."

Despite the Committee's opinion, respondent argues his conduct may have been appropriate due to this court's holding in *State v. Rice*, 227 Kan. 416, Syl. ¶ 4, 607 P.2d 489 (1980). We held in *Rice*:

"Lawyers holding part-time positions as judges or prosecuting attorneys should not appear as counsel for defendants in criminal matters in the courts in which they have responsibility. *However, they may be far enough removed that they can appear in other courts,* in which they have no substantial responsibility by reason of their government employment, as counsel for criminal defendants without giving an appearance of impropriety and without creating a conflict of interest." (Emphasis added.)

The key to our holding in *Rice* and its application to the present case is in the italicized phrase quoted above. Here, Lake was clearly not "far enough removed" that he was able to appear on behalf of the complainant in other courts. In addition to the fact that Lake represented Ms. Hamner in Shawnee County while similar criminal charges were pending in Jackson County, respondent was inextricably involved in the business, the financial failure of which resulted in the criminal charges.

The evidence clearly and convincingly supports the panel's conclusions that respondent violated DR 5-105(A) and DR 1-102(A)(5).

Respondent also maintains the discipline by public censure recommended by the panel is inappropriate. Respondent cites a number of cases where public censure has been imposed, and contends public censure is too harsh in this case.

After carefully considering the record herein, a majority of the members of the Court approve and adopt the report of the Board for Discipline of Attorneys. Justice Allegrucci would discipline the respondent by private censure.

IT IS THEREFORE ORDERED that J. Richard Lake be and he is hereby disciplined by public censure and the costs herein are assessed to the respondent.

Dated this 1st day of May, 1987.